BLAS FERMÍN COLÓN HERNÁNDEZ ET AL., Plaintiffs and Appellees, *v.* THE MUNICIPALITY OF OROCOVIS ET AL., Defendants and Appellants, COMMONWEALTH OF PUERTO RICO, Third-Party Defendant and Appellee.

No. R-71-292.     Decided December 13, 1972.

*Vicente Santori Coll* and *Luis Rodríguez Bou* for appellants. *Enrique Corchado Juarbe* and *Manuel González Villafañe* for appellees. *Gilberto Gierbolini, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for third party defendant-appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Rosa Casiano, married, mother of four children, worked as Supervisor in a stocking factory in Orocovis. On May 6, 1969, she left her work but she could not reach her home. The heavy rains that had fallen upon the Central Range of Mountains caused the flooding of the Orocovis River. The waters passed over a bridge at the entrance of the town. The traffic was interrupted. Many persons had gathered at both sides of the bridge to watch the current. Several vehicles, as well, had stopped to wait for the waters to lower. While Rosa Casiano and her fellow workers were waiting, a school bus owned by the Municipality of Orocovis arrived. A witness for plaintiffs testified:

". . . then the man who drives the bus arrived. Then he stopped and he said, that certainly, he was going to cross; that those of us who wanted to go with him to get in the bus. Then we got in the bus. Then . . .

THE COURT: Go slowly, if you please, lady. The driver of the bus said that he was going to cross . . . . And that whoever wanted to go in the bus to get in it." (Tr. Ev. p. 6.)

Rosa Casiano and her fellow workers boarded the bus. Some vehicles had to be moved so that the bus could start moving. "At the time on which the bus driver decided to go across the bridge, the current of water reached an altitude of from 5 to 6 feet over the bridge level. The bridge could not be seen because it was entirely covered by the dark waters of the flood. The current was very strong and had been like that for several hours before the accident occurred." (Finding of Fact No. 9.)

Teodoro Correa Alvarado, plaintiffs' witness describes what happened thus: "As soon as he tried to go across, the water lifted it [the bus] from its front part and its right side and threw it over the bridge to the left side . . . ." "Later a truck was parked on the parallel ford and they brought a wooden plank and laid it between the window of the truck and

the window of the bus and through it the women were taken out." (Tr. Ev. pp. 12 and 13.)

All the women who boarded the bus, except Rosa Casiano, were saved. The trial judge summarizes what happened to her as follows:

"Upon observing what had just happened Iluminado Díaz moved his 14-meter-long truck to protect the bus from the waters. He broke the windowpane of a window of the bus that was filling with water and the door opened. The water reached the women up to their chests. He gave a monkey wrench to another person within the vehicle to break more windowpanes. At that moment Mrs. Casiano, *seized with panic,* jumped through a window on top of him and both fell into the water. He was saved. She was not." (Finding of Fact No. 10.)

The widower and the four children filed a claim for indemnization against the Municipality of Orocovis and its insurer. The latter filed third-party complaint against the Commonwealth. The trial court sustained the complaint. It assessed the damages suffered by all plaintiffs at $119,240 reducing them to $83,468, upon determining that the victim had incurred 30% negligence. It determined that the insurer was liable for $20,000 and ordered it to pay $5,500 for attorney's fees. It ordered the municipality to pay $1,000 for that concept. It dismissed the third-party complaint filed against the Commonwealth of Puerto Rico. The municipality and the insurer appealed. They assign several errors.

It held besides, that the Municipal Law, as amended, 21 L.P.R.A. § 1603(a) (Vol. 4A 1972 Supp.), prevents that a judgment be rendered against the municipality for an amount in excess of $30,000 without previously obtaining the consent of the Municipal Assembly.

■ (1) Appellants' contention to the effect that the driver of the school bus was operating it without legal authorization lacks merit. The Vehicle and Traffic Law provides in its § 13-101, 9 L.P.R.A. § 1751 that:

"The owner of a motor vehicle shall be liable for damages and losses caused through guilt or negligence by operation of such vehicle when operated by or in the possession or under the control of any person who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, obtains possession thereof by express or tacit authorization of its owner. In any event it shall be assumed, unless otherwise proved, that any person operating or having in his possession or under his control a motor vehicle has obtained possession thereof with the authorization of its owner for the main purpose of operating it or having or allowing it to be operated by a third person.

"The person for whose negligence the owner of a vehicle is to answer under the provisions of the preceding paragraph shall be bound to indemnify said owner."

In view of this legal provision, the conclusion that the municipality answers for the acts of the driver is inescapable.

(2) Appellants maintain that under the circumstances in which the events occurred, the victim's children and widower are prevented from being indemnified. Let us re-examine what happened.

A Supervisor of a stocking factory, mother of four children, upon leaving her work, finds that she cannot reach her home because the river is overflowed. There are many persons at both sides of the bridge waiting for the river to go down. The waters cover the bridge completely and that notwithstanding she boards the bus with other fellow workers and when the bus starts to go across the bridge the river drags it towards a side of the bridge. The vehicle gets full of water. They decide to put a loaded truck by the side of the bus to protect it from the force of the current. At the same time they use it to lay a wooden plank and facilitate the exit of the passengers. The truck driver broke the bus windowpanes to permit the water to flow without obstruction. The victim, seized with panic, jumped through one of the windows. She died. All her fellow workers were saved.

In *Viñas* v. *Pueblo Supermarket*, 86 P.R.R. 31 (1962), we considered the defense of assumption of risks in the light of the present state of law. We stated therein that the term assumption of risks has two meanings. Assumption of risk in "primary" sense and in "secondary" sense. In the first acception "the term is . . . employed in such cases where the defendant has not incurred liability since he did not owe any duty to the claimant; or if he did, he did not breach it." *Viñas, supra* at p. 34. This meaning is the one which appellants maintain that is applicable to the case at bar. The other acception classified as secondary, "is but a phase or showing of contributory negligence." *Viñas, supra.*

■ After having considered how the events that gave rise to the action exercised developed, the acception of "primary" is not applicable, inasmuch as although the driver had no obligation whatsoever towards the persons before they boarded the bus, once he put it at the latter's disposal, he assumed a liability that by virtue of what has been provided in the Vehicle and Traffic Law previously cited, reaches the municipality. It seems clear that the applicable rule is the assumption of risk in its second acception; which as we have said is nothing more than contributory negligence. Now then, the driver's negligence was not greater than that of Rosa Casiano, as the trial judge determined. The danger to which she was risking herself was evident to the latter, and really the panic that seized her contributed to her misfortune. Under those circumstances it seems to us that a reasonable distribution of the negligence would be 50% for the victim and 50% for the bus driver.

(3) The trial court granted the following amounts: "(1) To Blas Fermín Colón for the death of his wife, loss of her company, affection and personal attention and his mental anguish, $25,000, and for the loss of the income which she contributed $12,880, for a total of $37,880. (2) To Rosa Ivelisse Colón for the loss of her mother, her affection and com-

pany and her mental anguish upon observing the events, $15,000 and for the loss of the income which she contributed $12,880, for a total of $27,880. (3) To each one of the minors, Blas Orlando, Ramón Luis, and José Reinaldo Colón for the loss of their mother, her affection and company and their mental anguish, the sum of $5,000 and for the loss of the income which she contributed, the sum of $12,880 for a total of $17,880 each. Of this judgment defendants will answer for 70% of the amounts assigned to each plaintiff and codefendant Insurance Co. of Puerto Rico will answer for the sum of $20,000 under the policy."

The trial court granted the amount of $64,400 for loss of profit. To reach that amount it took "as basis the weekly salary of $60 and a life expectancy of 30 years and considering that with four dependents no income tax will have to be paid deducting a third part for the support of the deceased." (Conclusion of Law No. 6.)

To reach the amount of $64,400 the court multiplied the weekly salary of $60 for the life expectancy of the deceased which it estimated in 30 years. This operation gave as a result $93,600 from which a third part was deducted for support, adjudging to the widower and to the children in equal parts the remaining $64,400.[1]

The judge tried to follow the formula to which we referred in *Widow of Seraballs* v. *Abella Hernández,* 90 P.R.R. 360 (1960), but did not adjust it, in accordance with the table to which we referred in that case, taking into consideration the fact that a lump sum would be received.

■ Without taking into consideration whether that is the correct manner to determine the compensation for loss of profit, the fact is that no evidence as to the state of health of the deceased was presented, or of the average income derived from her work for several years before the accident; see

---

[1] The correct result of this operation is $62,400 and not $64,400.

*Widow of Delgado* v. *Boston Ins. Co.*, 99 P.R.R. 693, 707 (1971), what makes impossible to determine adequately the amount of that item.

The elimination of the amount granted for loss of profit lies.

■ (4) The trial court was correct in dismissing the third-party complaint filed against the Commonwealth. The fact that an adequate bridge had not been constructed was not the proximate cause of the accident.

(5) As to the amounts granted for attorney's fees what the insurer must pay is reduced to $2,500.

It having been determined that the plaintiffs' predecessor incurred 50% of negligence, it is proper to modify the judgment ordering the defendant to pay Blas Fermín Colón the amount of $12,500, Rosa Ivelisse Colón the amount of $7,500, and each one of the minors $2,500, that makes a total of $27,500 of which the insurer shall pay $20,000.

The judgment rendered by the trial court will be modified in accordance with the terms of this opinion.